arguing on behalf of the defendant, Mr. Richard J. Boyle, arguing on behalf of the plaintiff's attorney, Ms. Joan Miriam Drifty. Counsel, if I may please report. There are four issues in this case. I'll address them as I address them in my brief, and I'll try to just make a few points about them. With regard to the first issue, the possession issue, or the knowing possession issue to be more specific, I cited in my brief a couple of cases that I think are on the obvious side where it wasn't knowing possession, and then I cited a couple of cases where the court found that it was knowing possession. And I think, frankly, this case sort of falls in between those categories, but I do believe when you look at all the case law, you should come down on the side of not proving the case beyond an insult. You know, for example, in the McLaren case, we had a situation where there was proof of recent exclusive access to the, I believe it was a gun in that case. No, I'm sorry, it was narcotics in that case. And there was a dog sniff almost immediately afterwards, and they said that, well, if this was drugs that were sitting there for a long time and the defendant was kneeling, then the dog would have sniffed the narcotics. So that was sort of specific proof that the defendant was there and that he was in recent possession of the drugs. The Peete case was the case, I guess, most factually similar to this case. However, I do think there's some significant differences. The Peete case talked about the person who was running away, and there was evidence that he was actually in the specific area where they found the gun through the neighbor who testified, and that they had earlier checked that day because there was no yard work and there was no gun there. So we have specific location, we have recency, and we have a lack of the drugs there beforehand. So I think when you piece this all together, what you have is, if this was a situation where, you know, the neighbor, sort of like in Peete, had testified, yes, I saw the defendant right by those leaves or garbage, whatever you want to say it. And then I had checked there earlier, it wasn't there. Instead we have is, we have supposition that he passed through the area, because that's sort of the general area where he was running from, and we have a gun that was found on top of leaves, and again, supposition that it hasn't been there for a long time because it would have been buried supposedly. But we have something that starts the whole process, that as he gets out of the car, he's not the one who drops it, but he's holding on to a pocket, or he's holding on to his pants. Now, we could assume that he's pulling them up so that they don't fall down, because many young men wear them lower, but we could also reasonably assume, couldn't we, that he's got something in there and he's running to get it. Well, that's certainly one factor or one fact that could be among the circumstantial evidence that we could use to try to prove beyond a reasonable doubt, and I guess that's the rub in these cases, is how much is inference upon inference equals nothing, and how much is inference upon inference upon inference, you know, now we're talking about reasonable doubt. So certainly that's a factor, absolutely, and certainly it's a prior fact issue that they can consider as one of the factors. Well, you know, even if we were to make the assumption that he's only holding up his pants, something might be heavy in those pants that's pulling his pants down. I mean, it seems to come back to, why is he holding on and running? That kind of starts the process, don't you think? Well, I mean, who knows? There could be a lot of things in his pocket. We're also assuming there is something in his pocket, again, because what you said before, holding up pants could just mean holding up pants. When I'm running, now I'm holding up pants. Wasn't he seen shortly thereafter by the police officer when he was walking, not holding up his pants? Yeah, so I think the theory is, if I'm not mistaken, that he's running initially at a time when we're going to say he did have something, and then when he is caught afterwards, now he's walking because he has nothing to hide from. But again, I think that is, because you could... It's all circumstantial. It is all circumstantial. And so how are we to reverse the trier fact on their way to the circumstantial evidence? Well, I think two things. First of all, I'm going to give a sort of a reverse look at that. The reverse look at that is that he was running when he thought he was being chased by the police, and then once he thought he was out of harm's way, he stopped. That's sort of how normal police chase is. He has to stop at some point. So I don't think there's anything abnormal about that whatsoever where you can take that to mean anything significant. However, I think the problem I think probably Your Honor struggles with a lot is, at what point do we just say, we can't just defer to the trier fact? Because that's what kind of appellate courts are all about, because we can't just always say, well, as long as there's circumstantial evidence, then it's up to the jury to decide. Because obviously we have a case law specifically regarding drug possession and gun possession where there was circumstantial evidence that pointed to possession, but they still said it wasn't enough circumstantial evidence. So the point is, was there enough circumstantial evidence? Well, we have to look at the inference, the court's inference of that circumstantial evidence to determine whether or not it was unreasonable, don't we? Well, I don't take issue with it could be a series of reasonable inferences, but that doesn't answer the question of whether or not that then equates to proof beyond a reasonable doubt. You could make a series of inferences as to why possession was proved, but it doesn't necessarily mean you've proved your case beyond a reasonable doubt. But are we viewing the light, we're viewing the evidence in the light most favorable to the state at this stage, correct? Yes, but I think if we just go back to defer everything, light most reasonable, then there wouldn't be this body of case law that talks about what the state needs to prove to make the case beyond a reasonable doubt. But on appeal, you know, there's a whole body of case law that reverses cases, I think, possession cases. So the answer can't simply be the standard and inferences. I see what you're saying. Yeah. Why don't you move on to your next issue? Sure. You don't want to have to tell me. Regarding the gang member issue, I think, unless I'm missing something that seems to be a fairly straightforward issue, if you look at the definition of gang member, which I went through ad nauseum and I'm not going to do now because it's extremely complicated, I don't think, frankly, anyone in the law was even aware of that definition because no one cited to it, no one offered testimony that would have mirrored that. They basically just sort of decided it's a common sense kind of thing of does it seem to me he's a gang member and he really was. The problem is when you have a specific definition of what a gang member is, you have to meet that definition to make it. Well, what about the application of barriers to this particular situation and the Aurora Police Department has this system that they use? Well, that's all kind of good and there may well be enough evidence to conclude based on common sense, oh, I think he wasn't a gang member. But, again, that doesn't get around. They may have satisfied some internal standard of what a gang member is, but they have to meet the statutory definition of what a gang member is. I'm not saying they couldn't have. I just don't think anyone was aware of the statute and presented evidence on it. Regarding the Snapchat issue, obviously I think the big case that we're relying on is Kent, which is a fairly recent case. I think it's on all fours with Kent. And, in fact, in that case I think there was even more to be honest with you because there was a similar name in that case and it was connected to the IP address of the girlfriend and yet they still didn't think the foundation was there. The state, I believe, kind of argued in their response that, well, we can look at this as just a regular old DVD or a regular old video. What does it take to introduce a video? The problem with that is if you go to that standard, then the foundational requirements are you can either introduce it as a business record, which they didn't try to do in this case because this is just something that appeared, or, second of all, you have some sort of personal record and they got someone from the video who said, yeah, I recommend that video. It was taken two weeks ago and that's the defendant. That's a way of introducing it. But just to basically say I saw this on Snapchat and I know the defendant and that's him, I think hence it's shown that you need more than that. And then finally with regard to the one physical act, I think the case law is complete with language such as physical act, conduct, and this is all one physical act. It's all one course of conduct regardless of whether there's separate evidence or not. So now if you have any questions, I will reserve my time. All right. You'll have an opportunity to reply. Ms. Kripke? Good morning, Joan Kripke. On behalf of the people of the state of Illinois, also. The court below specifically found actual possession of the gun by the defendant, Burger King, and the court stated that it did not discuss constructive possession of the gun at the home where the gun was located. So regardless of the defendant's argument, I think that that is irrelevant because the court made this specific finding that the defendant had the gun on him when he jumped out of the car and then when he fled from the police. Was there ever any testimony that he dropped the gun at the Burger King? No. No. And you can see in the video that he's holding on to his right side, right pocket. He's not holding up his pants. He's clutching at his side. He could have had a bag of gold in there. He could have. But with the other, but again, this is, I mean, it's a circumstantial evidence case. He was found within two or three homes of where the gun was located almost immediately after the lady heard the noise and the police discovered the gun. It is all circumstantial. Can we say for sure because no one saw him drop that gun? No. But he was in a car with another fellow that was pulled over by the police. Before the car even stopped, the only people who tried to flee were the two guys who had guns. Nobody else who had stopped had a gun on them. Nobody else tried to flee the police. To say that just he wanted to run away from the police to get out of harm's way, that doesn't make sense. The case law is replete saying that fleeing the police is circumstantial evidence of consciousness of guilt. And I think that that is something that you have to focus on. Why was he fleeing the police? He didn't have anything to hide from them and just stay there, which is exactly what happened when Sergeant Robinson Chan, I believe that's her last name, said, well, I knew this when she got the bulletin. They're out looking for somebody, something. She sees this guy and she says to the person driving, stop, I know him. She walked up to him and he immediately succumbed to being arrested. He didn't flee from her. And I think that that is also circumstantial evidence that shows, you know, why did he flee before? He's not fleeing now. And the answer is he no longer had the gun on him. And so he had no reason to flee the police because he had no consciousness of guilt at that point in time. For all these reasons, I believe that we've proved beyond a reasonable doubt that he had possession of the gun at the Burger King. So you're saying that the issue is not constructive possession, he had actual? He had actual possession, and that's what the court found. I would like to skip over the gang membership. The Berrios, well, Murray is in the Supreme Court right now. Berrios is being held. Clearly these cases are being, and you're holding Figueroa and other cases, I guess, also waiting to see if there is, what the ruling comes? Well, on Berrios, at least two of us were panel members on that case. Okay. And so we're familiar with it. I think the opinion that we wrote does express some concern that these are just physical records. They're documents that people have said, well, I know him to be a gang member. How does that happen? You know, most of them don't walk up to you and say, hi, I'm a deuce. You could put that in the record. But that's not what these gang sheets are about. And I assume that's what the Supreme Court will be looking at. Right. I mean, I can't say, oh, yes, we proved up the elements of the offense, because we didn't go through it. I mean, counsel's correct on that. And if the court reverses and if the court does it retroactively, well, then those cases, I would presume that those counts that he was found guilty of in this case would fall. And I sort of wanted to skip over, I wanted to skip the Snapchat video and go to the 1 Act 1 crime because of that. I'm going to pose something to you that is a hypothetical, but I feel I brought it up once in another case, and I know the court didn't address it even though they could have addressed it at that point. They were able to get around it. In this case, I believe that he was found guilty properly of four – yes, he had one gun that he possessed, but there were four different crimes of which he was accused. And they found him guilty of every single one and every single element of every single crime, none of which is the lesser included of another. The one that stands out is the one he got the most – which is possession of a weapon by a felon. And if the other ones fall, that one still stays in place. But my hypothetical and my concern that I want to posit to you is this. Had the court made the two game possession counts, Count 1 and 2, the higher – the longer sentences, and the one act one and the possession by a felon and the facing the serial murder were the lower counts that were merged into it. If the Supreme Court reverses Berrios and Murray, and if it's retroactive, then those two cases would fall. But if you don't have a separate conviction on the possession by a felon, of which they don't contest that he was a felon, and if you uphold the fact that he did have possession, then automatically if you don't find that that's a separate count with a separate sentence that is merged into the others, then he walks on that. Yeah, but when those offenses are based on precisely the same physical act, how do we get around that? Do we say, oh, we've got to wait and see what happens up at the Supreme Court? I mean, isn't it there's case law that tells us we can't – or tells you, tells all of us, someone can't be convicted on multiple offenses that are of the same physical act. But, for example, if you had a case of someone driving while under the influence and fleeing the police, and they're found guilty of both, but they're in the same car, they're fleeing the police while drunk, in the same car, in the same instance, those are two convictions that would stand as separate convictions. But they were part of the same physical act. They are the same physical act. They're driving away from the police while drunk. They're eluding the police. But eluding and fleeing requires an intent. They intended to do that, and DUI is not necessarily that type of an offense. That's a rather significant difference in proof. But you're talking about intent. We're talking about a physical act, not the mens rea. So the physical act of fleeing and driving that car is exactly the same. The mens rea may be different. But we're not talking – but one act, one crime doesn't talk about a different mens rea. It talks about the possession. And so while the guy's driving while under the influence, and while the person is driving fleeing the police, it's the same physical act in the same car at the same moment. But those two physical acts would stand as separate convictions. And that's why I'm saying it – plus Carter, which the defendant references, went up to the Supreme Court. Carter was then sort of overturned by a case called People v. Ahmed, also by the Supreme Court. And in those cases, again, it's not quite the same thing, but it depended on the meaning of the word any firearm and whether or not a person could be guilty of possessing – if he had multiple firearms which were loaded, was he guilty of possession of ammunition and possession of a firearm? And ultimately, they decided the person, even though it's one gun, with bullets in the same gun that he's possessing at the same time, he could be found guilty of possession of a firearm and possession of the ammunition. All right. If we look at an older definition of act, which is that People v. King case, it is any overt or outward manifestation which will support a different offense. So what are the overt or outward manifestations in this case? Of where he possessed the gun. One was in the car. One was on the public way. One was just the fact that he was a felon possessing the gun. Which is kind of a status as opposed to an act, correct? Okay. True. That's true. And then the other one was possessing it with a defaced serial number. So that's possessing it, but not – it didn't – he – it didn't – you didn't also have to prove he was on the public way or he was in the car. But the offense is possession of a defaced, not possession having defaced. He's not charged with having, which would be a different act. But everything that's here charged seems to relate to that gun and a certain status that he holds, which really is part of a bigger – is part of a bigger possession of that gun. I'm just having trouble – I'm having trouble with your hypo, too, because I just – I think it requires different things. The actual driving, we all agree. The actual being drunk, well, it's not good. The – but you – to prove those, you have to go beyond just that. He had to know he was fleeing. He had to. That's a mens rea. You're adding a mens rea to an act, and an act is just a physical act. Well, okay. The Supreme Court doesn't necessarily believe that, but, you know. Okay. I just – I just – and, again, it's not something that is before you, but it's a concern for me that when you're looking at, why are these not four separate acts? They – I mean, when he's on the public way, he's not in a car. And that's like saying – so that's – those are separate acts. None of the four elements – none of the elements of the four convictions was a – was a subset or overlapped any of the other ones, except that he had a gun. So, anyhow, that's how I wanted to look at it. I mean, I think that it is proper to have found him guilty of the four separate – separate – the four separate offenses and that they ought to have been charged and then merged. And I think that's also something that's got to be considered when, in the future, if something falls and you just say, well, we're not going – we're just going to merge it all and not sentence you on it, then you don't have a conviction. Can we go back to the Snapchat? Sure. How are you – how are you sure that somebody didn't compromise his account, for instance, you know, or somebody make a fictitious Snapchat account, Snapchat account with his name on it, had access to his account, or we don't even know when this was taped? Well, how does that come in when there's that doubt? Well, we do know when it was taped because the Snapchat videos disappear within 24 hours. Officer, investigator Hill-Gott said that he received it almost contemporaneously with the stop by the police. And he recorded it on a separate phone, made the DVD, et cetera, et cetera. Being personally involved with the Kent loss up here, I will say that they did not have more proof in the Kent case because they did not have an IP address that was definitively linked up to the defendant's girlfriend in that case because if they had done that, that case might not have been reversed – may not have been reversed on the evidence underlying that particular case. So you argue you know when it was made. How do we know who made it and whether or not it was truly his account? The only thing that we have, by any – you still don't know that even with an email. You may have an email that comes from my address and my IP and you can link it up to me, but no one knows if I walked away from my computer and somebody came in and sent that email. I mean, I think it's true of any of this electronic evidence that you've got that problem. As long as you leave your phone, your computer, whatever, open and somebody else can just come in and use it, you'll never be able to prove definitively that it was that specific person who did it. All we have from Officer Hilgothis, investigator Hilgothis, is him saying that he had received numerous Snapchats from DaddyDeuce22 that they almost always included the defendant in them. This particular one, the defendant was wearing the same clothes that he had on when he left the car as were two of the women and the other fellow who had the gun. The same people. The same people. And so it was within the same amount of time. Regardless of all of that, of laying the foundation for this particular thing, the court didn't rely on it and it wasn't a jury trial. The court said, yeah, I see that he had a gun there. It kind of looks like the gun that was found at the house. I don't care. He said, I'm finding that there was possession by this defendant at the Burger King. And so the court did not really rely on the Snapchat video. And if it was allowed into evidence improperly, I'd say it was harmless error. Are there any other questions? For all these reasons, we think you should affirm all four convictions. Thank you. Mr. DeBork? I'll go in reverse order. So the Snapchat. Did the court rely on it? Well, it specifically referenced it in the trial court finding. Well, but does the trial court reference it and say, I'm not going to consider this, or it is not dispositive in my view? Well, I would say in your reviewing all the evidence in the case and you're talking about all the factors that go into reasonable doubt and you specifically reference it and note the similarities in the gun, I think that absolutely the prior fact relied on that. I think, A, in order to say that it did not affect the ruling, I think he would have either had it not considered at all or said, I'm noting this, but I'm not considering it. He never said that. He said, I note that the gun is the same or similar to the one here. Why would you say that? Isn't that somewhat the basis under which the trial court admitted the piece of evidence in the first place? It may have been. Say three people close and the ñ I mean, without the gun, what's the point? Well, it may have been. Well, I agree. What's the point of even having it unless you're going to use it in your findings? No, no, no. That's not my point. You know, the trial judge can review all the evidence. So you're saying unless the trial judge says, look, I absolutely didn't consider this, we assume they did? Well, I think the general law is that where there's affirmative evidence in the record that they did consider it, then they considered it. And you would point to where and show us that? And I would point in the ruling itself where he said, I note that the gun is of a similar nature to the one here. But I also say that that's not really the foundation anyway, because the foundation is what I said before about either a business record or personal knowledge, and I don't think they had either. But anyway, if this court is going to consider it, I understand in this case it may not be the most consequential in the world. But, I mean, we've got to think about the future here. I can very well see a murder case where the main evidence against someone is a Snapchat. And when we could have easily contacted Snapchat to try to lay a foundation or easily contacted the individuals in the video, I think it's a stereotypical case to say, looks like him, it's him, and really do away with the normal foundation. Well, they pretty much had the people who were in that video, but they weren't really in a position to talk because at least one other of them probably was getting charged. I don't know about the two in the front seat, if they were charged with anything. They're not likely to say, oh, yeah, that's the guy in the back seat who had the gun. Wasn't this more, though, for the gang membership than it was the gun? I mean, the gun was mentioned, but he commented more on the color of the clothing, the tattoo not removed, things that would be indicative of gang membership. That is a good point. It was for a dual purpose. That is correct. Although, frankly, in the end, I'm not sure if that matters because they didn't meet the elements, is my argument. Anyway, and also, too, if they can't go the route of getting someone in the video to say it was him, I think they could at least have gotten in contact with Snapchat. Now, is that the easiest thing in the world? No. I spent a year trying to get records with Google once. It's not easy. Then again, I'm not a law enforcement officer. I can imagine that it's a lot easier for law enforcement. And if it's important, they'll do it. And if you set the precedent that you don't have to do it, they won't do it. And the next murder case that comes around, they won't do it, and it won't be admitted anyway. Regarding the one-act-one-crime, I will just say, as far as the DUI, I don't believe it's an actual case. I think it's just hypothetical. I wouldn't characterize it as a men's rape. I would actually characterize it as a different act. The minute the lights go on and you proceed anyway, that's a different act. That's when you do a different act. Regarding the fleeing issue, I would say that, yes, fleeing can be one factor to consider. But in the normal cases where we look at fleeing, they're fleeing from the object itself. You know, the one case that we cited in there, I think it was Ingram. Maybe I got the case wrong on that. There was a gun found in the car, and he was the only one fleeing from the car. Who isn't fleeing flight evidence of guilt? Well, consciousness of guilt, but how are you going to connect that to the actual evidence? Because it can be consciousness of guilt if he doesn't want to get caught in that area where there was a gun. There was a gun found in the car, after all. It could very well just be seen as, I'm fleeing from that gun, not my gun. And then second of all, the reason as to why he may have ran after or ran before he saw the officer but not after. Again, fleeing from the gun in the car, he sees the gig is up, the officer, I'll surrender. Before he thought he could get away, now he can't. With that, I will address the end. Thank you. Thank you, counsel, for your argument. We will take a brief recess to prepare for the next one.